**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

===============================
                                   :

**AUCTUS FUND, LLC,**                    :

                            :

          **Plaintiff,**               :        <u>**Civil Action No._____**</u>

                            :

          **v.**                      :

                            :

**MJ BIOTECH, INC., f/k/a "MICHAEL**  :
  **JAMES ENTERPRISES, INC.,"**    :

                            :

          **Defendant.**             :

                            :
===============================

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

### I. <u>INTRODUCTION</u>

1.     The Plaintiff, Auctus Fund, LLC, (hereinafter "Auctus" or the "Fund"), respectfully submits its Complaint and Demand for Jury Trial (hereinafter the "Complaint") against the Defendant, MJ Biotech, Inc., f/k/a Michael James Enterprises, Inc. (hereinafter the "Company" or "MJTV"), in the above-captioned action. The Plaintiff's allegations, as set out herein, are asserted for damages arising from, and resulting from the Defendant's violations of the following:

    a)    Section 10(b) of the Securities Exchange Act of 1934, *as amended* (hereinafter the "Exchange Act"), 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5;

    b)    Massachusetts Uniform Securities Act, M.G.L. c.110A, §§ 101, *et seq.*, *as amended* (hereinafter the "Uniform Securities Act");

    c)    breach of contract;

    d)    breach of implied covenant of good faith and fair dealing;

e)      unjust enrichment;

f)      breaches of fiduciary duty;

g)      fraud and deceit;

h)      negligent misrepresentation; and/or

i)      the Massachusetts Consumer Protection Act, M.G.L. c. 93A, §§ 2 and 11.

2.      The Plaintiff further alleges that, as a result and as caused by the Defendant's breaches, actions, omissions, policies, practices, and/or courses of conduct, Auctus has suffered irreparable harm, requiring injunctive relief and specific performance, harm to its business and reputation in the investment industry, damages from the Defendant's coercion, duress, and unfair and deceptive anti-competitive acts, causing lost revenue, lost profits and prospective business, together with its injuries and damages.

3.      The Plaintiff respectfully requests that its causes of action against the Defendant proceed to a trial by jury, that a judgment be entered on all Counts against the Defendant and that Auctus be awarded its general, compensatory and consequential damages and losses, costs, interest, plus multiple and/or punitive damages, attorneys' fees, and grant, order and enter temporary, preliminary and permanent injunctive and equitable relief, and grant, order and enter declaratory relief, and any such other relief as this Honorable Court deems just and appropriate.

## II. **PARTIES**

4.      The Plaintiff, Auctus Fund, LLC is a limited liability company, duly organized in the State of Delaware, with its principal place of business located at 545 Boylston Street, 2nd Floor, Boston, Massachusetts 02116.

5.      Upon information and belief, the Defendant, MJ Biotech, Inc., is a corporation, duly organized in the State of Wyoming, with its principal place of business is currently located at 10452 Greentrail Drive North, Boynton, Florida 33436.

6.      Upon information and belief, the Company has undergone certain changes to its name and domestication in differing states. On or about December 11, 2015, the Company filed an Amendment to the Company's Articles of Incorporation changing the Company's name from BullsnBears.com, Inc.to "Michael James Enterprises Inc." and filed with FINRA for a new stock ticker symbol "MJTV." Additionally, on or about April 12, 2017, the Company changed its name to MJ Biotech, Inc. in order "to better represent the new direction of the Company."

7.      Upon information and belief, on or about August 25, 2017, the Company amended its Articles of Incorporation to change the domicile of the Company from the State of Delaware to the State of Wyoming.  On or about May 16, 2019 the Company moved its principal executive offices from 109 East 17th Street, Suite 80, Cheyenne, Wyoming 82001, to 4781 North Congress Avenue, Suite 1102 Boynton Beach, Florida 33426.

### III. JURISDICTION AND VENUE

8.      The Plaintiff asserts that this Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and pursuant to Section 22(a) of the Securities Act of 1933, *as amended*, 15 U.S.C. § 77v(a) (hereinafter the "Securities Act"), and Section 27(a) of the Exchange Act, 15 U.S.C. §78aa(a).

9.      The Plaintiff contends that, pursuant to 28 U.S.C. § 1391(b), venue is proper in the District of Massachusetts in that, pursuant to the Transaction Documents (defined below), the Plaintiff Auctus and Defendant MJTV agreed that any and all disputes between and/or among them shall be brought, *inter alia*, in the state or federal courts in the Commonwealth of Massachusetts.

Additionally, this Court is in such District where the Plaintiff Auctus is headquartered and has its principal place of business and is where the violative conduct described herein is alleged to have occurred.

10.     This Court has personal jurisdiction, generally and specifically, over the Defendant by express terms of the Agreement, and as arising from its extensive business contacts, generally over time and specifically, in its business dealings with Plaintiff Auctus within the Commonwealth of Massachusetts.

## IV. <u>FACTUAL BACKGROUND</u>

### A.      <u>The Auctus/MJTV Transaction Documents and Contracts</u>

11.     On or about December 16, 2016 the Company executed, *inter alia*, a certain Securities Purchase Agreement (hereinafter the "First Purchase Agreement" or the "First SPA") and a certain Convertible Promissory Note with a principal amount of Sixty-Three Thousand - Two Hundred Fifty and 00/100 ($63,250.00) Dollars (hereinafter the "First Note"), thereby entering into a contract with the Fund for its investment in MJTV.  *See* First Purchase Agreement, attached, restated and incorporated by reference herein as **<u>Exhibit A</u>**; First Note, attached, restated and incorporated by reference herein as **<u>Exhibit B</u>**.

12.     On or about March 11, 2019, the Company executed, *inter alia*, a certain Securities Purchase Agreement (hereinafter the "Second Purchase Agreement" or the "Second SPA") (collectively hereinafter, with the First Purchase Agreement, the "Purchase Agreements" or the "SPA's") and a certain Convertible Promissory Note for a total of Thirty Six Thousand and 00/100 ($36,000.00) Dollars (U.S.) (hereinafter the "Second Note" and, with the Second SPA, hereinafter as the "Second Transaction Documents")(collectively hereinafter, with the First Note, the "Notes") (collectively, First Transaction Documents, with the Second Transaction Documents, hereinafter

as the "Transaction Documents"), thereby entering into a contract with the Fund for its further investment in MJTV. *See* Second Purchase Agreement, attached, restated and incorporated by reference herein as **Exhibit C**; Second Note, attached, restated and incorporated by reference herein as **Exhibit D**.

13.     Thereafter, on or about April 15, 2019, the Plaintiff and the Defendant executed an Amendment to the Second Promissory Note issued on March 11, 2019. The Amendment provides that the Fund and the Company agree that *"All references to "March 11, 2019" in the Note and related transaction documents shall be replaced with "April 15, 2019"*. *See* Amendment, attached, restated and incorporated by reference herein as **Exhibit E**. (emphasis added).

14.     A review of the Plaintiff's Transaction Documents reveals that the Note has a conversion feature into which entitles the Plaintiff to convert, at amounts and upon timing that Auctus deemed appropriate, the Defendant's debt obligations, in whole or in part, into freely traded shares of MJTV common stock. Under the terms and conditions of the Transaction Documents, the Plaintiff has, and has had, a contractual right to convert at a price for MJTV common stock, averaged over a series of prior trading days, including and preceding the Conversion Date.

15.     Based on its own financial statements filed with the U.S. Securities and Exchange Commission ("SEC"), the Company is unlikely to be able to repay the Fund, due to insufficient funds. Auctus' conversion feature allows the Fund to convert and sell MJTV shares, rather than based on the repayment in cash of interest accruing on the Convertible Promissory Note. Thus, the conversion feature of the convertible notes was, and remains, a critical feature to its fair market value.

16.     By the Transaction Documents, the Defendant was also required to allocate and reserve shares of its common stock for future conversions by the Plaintiff. The reservation of shares

was an independent obligation by the Defendant to the Plaintiff, and was a mechanism by which to effectuate the share conversion as envisioned by the Note.

17.     Thus, in detrimental reliance upon the information, representations and statements from the Defendant, the Plaintiff invested hundreds of thousands of dollars in the Company, which has, and has had, a fiduciary duty and a duty of the utmost loyalty to the Plaintiff. Unfortunately, to its detriment, the Plaintiff has learned that the Defendant had misrepresented and deceived the Fund, and omitted material information while having a duty of disclosure, regarding the Company, and perpetrated securities fraud in connection with the offer, purchase and sale of securities, in violation of, *inter alia*, Section 10(b) of the Exchange Act and Rule 10b-5, as promulgated thereunder, and the Uniform Securities Act, M.G.L. c. 110A, *et seq.*

### B.     Defendant's Misrepresentations and Omissions of Material Facts and Securities Fraud in Connection with Offer, Purchase and Sale of Securities

18.     The Plaintiff asserts and alleges that the Defendant misrepresented, omitted and failed to provide material facts to Auctus in connection with its investments and in the offer, purchase and sale of securities, and especially with respect to the operations, business, finances and other matters of Defendant MJTV.

19.     As an example of the material misrepresentations, omissions and false information provided to the Plaintiff, on or about August 18, 2016, the Defendant published and disseminated certain statements, entitled "*CFN Media: MJ Enterprises (MJTV) Jumps Into Cannabis Therapeutics for Sleep Disorder.*" which provided, in pertinent part, as follows:

> SEATTLE, WA--(Marketwired - Aug 18, 2016) -  CFN Media Group, the leading creative agency and digital media network dedicated to legal cannabis, announces the publication of an article discussing recent developments with Michael James Enterprises Inc. (OTCQB: MJTV). The company acquired the rights and intellectual property to develop and market therapeutics for sleep disorders using the cannabinoid dronabinol as the base ingredient in early August.

The Drug Enforcement Administration dashed hopes for federally-relaxed marijuana laws in August. Despite mounting scientific evidence, the drug czar decided to keep marijuana as a Schedule I Controlled Substance that has 'no currently accepted medical value'. The irony is that the FDA had already approved a cannabinoid -- dronabinol -- back in 1985.

The decision is certainly a setback for the cannabis movement, but there are several companies that could benefit from the classification. Pharmaceutical companies that leverage cannabinoids benefit from mounting clinical evidence of safety and efficacy. Once approved, these companies can charge premium prices for their cannabinoid-based therapeutics without having to worry about competition from widely available medical marijuana.

20.     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff, in that the Company misrepresented material information regarding its rights and intellectual property to develop and market therapeutics for sleep disorders using the cannabinoid dronabinol.

21.     As a further example of the material misrepresentations, omissions and false information provided to the Plaintiff, on or about August 11, 2016, the Defendant published and disseminated certain statements, entitled "*Michael James Enterprises Buys Assignment of Master Agreement to Work With HealthPartners Institute for Education and Research,*" which provided, in pertinent part, as follows:

SHORT HILLS, NJ--(Marketwired - Aug 11, 2016) - Michael James Enterprises, Inc. (OTCQB: MJTV) is pleased to report that MJTV has purchased all rights title and interest to a master advising agreement. This master agreement with HealthPartners now entitles MJTV to work with William H. Frey, II, PhD., who is an expert in intranasal delivery.

One of the largest medical research and education centers in the Midwest, HealthPartners Institute, helps transform health care in the Midwest region and across the nation. As part of HealthPartners integrated care system, the Institute uses research and education to advance the Triple Aim of improving health, experience and affordability for their members, patients and the community at large. HealthPartners Institute conducts health services, survey-based, behavioral

intervention, clinical and basic science research with collaborators within HealthPartners and around the world. Our research strengths include:

- Child and maternal health
- Chronic disease/diabetes
- Clinical research
- Critical care
- Health economics
- Mental health
- Neurosciences/Alzheimer's and Parkinson's disease
- Oncology
- Oral health/dentistry

William H. Frey, II, PhD., will serve as one of MJTV's scientific advisors and provide scientific advising services on behalf of HealthPartners Institute. MJTV will retain all right and title to all documentation and work product from this relationship. MJTV expects to add many more top scientific and medical experts in the coming weeks and months building the highest quality minds to advise and work with MJTV.

Dr. William H. Frey, II is the Founder and Co-Director of the Alzheimer's Research Center at Regions Hospital, Professor of Pharmaceutics and faculty member in Neurology, Oral Biology and Neuroscience at the University of Minnesota and consultant to the pharmaceutical and biotechnology industry. Dr. Frey's non-invasive intranasal method for bypassing the blood-brain barrier to rapidly delivery and target therapeutic agents to the brain along the olfactory and trigeminal neural pathways while reducing systemic exposure and unwanted side effects has captured the interest of both pharmaceutical companies and neuroscientists.

James Farinella, CEO of Michael James Enterprises, stated, "While this is new to MJTV, there has already been much time and work already invested for the future success of our company with this venture. We will be bringing in the top medical and scientific minds to the company to ensure the highest likelihood of success for MJTV and its shareholders."

22.     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff, as relating, upon information and belief, the extent of the rights title and interest to a master advising agreement, and the "top medical and scientific minds" advising the Defendant, and that there were material misrepresentations and omissions as to the Defendant's statement that it could "ensure the highest likelihood of success for MJTV and its shareholders."

23.     As a further example of the material misrepresentations, omissions and false information provided to the Plaintiff, on or about February 8, 2017, the Defendant published and disseminated certain statements, entitled "*MJTV CEO Officially Retires 8,425,000 Shares As Promised,*" which provided, in pertinent part, as follows:

> WHIPPANY, NJ--(Marketwired - Feb 8, 2017) - Michael James Enterprises, Inc. (OTCQB: MJTV) is extremely pleased to report that as promised on December 22, 2016, CEO, James M. Farinella last week retired 8,425,000 shares. This retiring of shares had the effect of reducing the outstanding number of shares from 25,029,572 down to 16,604,572 -- a 33.6% reduction.
>
> MJTV Board of Directors and Management team is committed to keeping a very clean capital structure that is conducive to the building of shareholder value. The Company also intends to retire an additional 750,000 shares in the next 30 days as well.
>
> MJTV CEO, James M. Farinella stated, "It is important to us to follow through on our promises. We are committed to a strong capital structure. While there is a lot of work to do, we are very excited about where we are with our VOLUPTAS product, the development of website and product line."

24.     Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff, inkling, upon information and belief, but not limited to, the "very clean capital structure" allegedly being built by the Defendant, which was allegedly "conducive to the building of shareholder value."

25.     As a further example of the material misrepresentations, omissions and false information provided to the Plaintiff, on or about March 31, 2017, the Defendant published and disseminated certain statements, entitled "*MJTV Corporate Update*" which provided, in pertinent part, as follows:

> WHIPPANY, NJ--(Marketwired - Mar 31, 2017) - Michael James Enterprises, Inc. (OTCQB: MJTV) provides this corporate update explaining where we are and what is on the horizon. Last August MJTV entered into a Stock Purchase Agreement with RP Capital Group Ltd for a Dronabinol treatment for sleep

apnea. Simultaneously we came up with conceptualized a creative delivery system for our female sexual arousal product and filed for patent and trademark protection. We also came out with essential oil alchemy, LUNA and are in the process of expanding that offering to more essential oil mix products.

To inform the investment community of our corporate activities we engaged MoneyTV in the autumn of 2016 along with Smallcapvoice.com on longer-term engagements and these engagements, which will continue through the end of 2017. We also engaged Mr. McCarthy to buy ad purchase advertising space on different various consumer based websites to begin pre-branding our Company and the products pre-launch. A key move for branding MJTV and our products was the engagement of our Brand Ambassador, Dr. Kristina Kincaid who has made YABYUM full body orgasmic meditation videos. We pushed these videos out to over 50 social media forums and unexpectedly they went viral in a very short period of time creating now a following of almost 1 million people.

All of the materials introduced to the public has have been created by MJTV. None of our vendors created any materials disseminated to the investment community. No affiliates or insiders of MJTV has ever sold or bought any share common stock of the Company in the open market. In fact, C.E.O. James Farinella retired close to 9 million shares due to his desire for the investment community to take him seriously when he said he was concerned about dilution caused by the need to take on the customary convertible notes that typically convert at a 45% discount to the market price (all disclosed in our filings which can be found on our website) to fund the company to this point. In fact, because of the retirement of Mr. Farinella's shares, even with some note holder conversions in the first quarter of this year, we currently have fewer shares outstanding now than at 2016-year end.

Moving forward, it is the Company's intent to pay off all convertible notes in the coming two months through more conventional financing and to move as quickly as possible in bringing the VOLUPTAS product to the market. We have also been in talks with several other companies exploring the possibility of potential partnerships for the distribution and joint marketing of other products.

26.   Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff, which included, upon information and belief, but was not limited to: a) a supposed "desire for the investment community" to take the Company's CEO "seriously;" b) a "concern[] about dilution caused by the need to take on the customary convertible notes;" and c)

the material representation of the "Company's intent to pay off all convertible notes in the coming two months through more conventional financing."

27.     Upon information and belief, Defendant MJTV did not file its 2018 Form 10-K with the Commission on a timely basis, and, upon information and belief, failed to file such annual report until on or about July 1, 2019, or several months after Plaintiff invested in the Second SPA and Second Note.

28.     Upon information and belief, the Defendant delayed it Form 10-K as it revealed that the Company had incurred net losses of ($15,298,151) since inception through December 31, 2018 and that the financials raise substantial doubt about the Company's ability to remain a "going concern." According to the Form 10-K, as of on or about December 31, 2018, the Company had a cash balance of $1 and a working capital deficit of ($2,476,448.00).

29.     Indeed, according to the delayed Form 10-K, the Company states, "our working capital is not sufficient to fund our operations for the next 12 months and satisfy our obligations as they become due." Upon information and belief, the Defendant materially misrepresented the operations and finances of the Company in its dealings with Auctus, and omitted material information which it had a duty to disclose, to the Plaintiff's detriment.

30.     Defendant MJTV has committed fraud and has made material misrepresentations and omitted material information while having a duty to disclose the same to the Plaintiff, prior to and in connection with the offer, purchase and sale of securities with Auctus, and in connection with the Inducement Transaction Documents and in connection with the Transaction Documents by which the Plaintiff invested hundreds of thousands of dollars in the Company.

31.     As a direct and proximate cause of the violations of the federal and state securities laws of the Defendant, Plaintiff Auctus has suffered irreparable harm, and general, special, and

consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

### C.   Defendant's Events of Default and Breaches of the SPA and Note

32.    The Plaintiff asserts that the Company incurred and/or caused several Events of Default, as set forth in Article III, entitled "Events of Default," of the Note. These Events of Default included, inter alia, breaches of following provisions of the Transaction Documents: a) Sections 1.3 (Authorized Shares); b) Sections 1.4(g) (Sub-penny conversion price); c) Section 1.4(h) (Failure to Deliver Common Stock prior to Delivery date); d) Section 2.8 (Non-circumvention); e) Section 3.1 (Failure to pay principal or interest); f) Section 3.2 (Failure to Honor Conversion); g) Section 3.4 (Breach of Agreement and covenants – Sections 2.8 of the Note (Non-circumvention) and 1.3 (Authorized Shares)); h) Section 3.5 (Breach of Representations and Warranties -Section 3(g) (SEC Documents; Financial Statements)) of that certain Securities Purchase Agreement (the "SPA") by and between MJTV and Auctus dated February 4, 2019; i) Section 3.10 (Failure to Comply with the Exchange Act); and j) Section 4.14 (Failure to notify of Future Financing). Thereafter, it is undisputed that the Company incurred and/or caused several Events of Default, as set forth in Article III, entitled "*Events of Default*," of the Auctus Note. In addition, pursuant to Section 3.1, an Event of Default shall have occurred by the failure of the Company to pay the principal or interest when due on the Note, whether at maturity, upon acceleration, or otherwise. *See* Note (**Exhibit D**) § 3.1. This Event of Default, together with others, have occurred and continue to occur.

33.    Upon the occurrence of an Event of Default under Section 3.1 of the Auctus Note, the entire principal and accrued interest shall be due and owing hereunder. Furthermore, an Event of Default pursuant to Section 3 of such Note, the Company is required to pay, and shall pay,

Plaintiff Auctus the "Default Sum" (as defined therein), due under the Note as multiplied by One Hundred - Fifty and 00/100 (150.00%) percent. Thus, as of April 29, 2020, the Company owes Plaintiff Auctus, under the SPA and the Note, the Default Sum Totaling Four-Hundred-Thirty-Two-Thousand-One Hundred –Sixty-Seven and 61/100 (**$432,167.61**) Dollars (U.S.). *See* Auctus Schedule as of April 29, 2020, attached, restated and incorporated by reference herein as **Exhibit 1**. Until paid, the Default Sum shall continue to accrue the default interest rate of Twenty-four and 00/100 (24.00%) percent per year, provided by the Note.

34.     In sum, the Defendant has committed securities fraud, unfair and deceptive trade practices, and has perpetrated a fraud and deceit upon the Plaintiff, which suffered as a consequence. Throughout, the Defendant has been unjustly enriched and converted the Plaintiff's assets, causing it to suffer further damages and injuries. As a result of the fraudulent scheme, actions, concealment, and omissions of the Defendant, the Plaintiff lost substantial monies and lost opportunity in such assets.

## V. <u>VIOLATIONS OF LAW</u>

### <u>COUNT I –VIOLATIONS OF FEDERAL SECURITIES LAWS</u>

35.     The Plaintiff reasserts Paragraphs 1 through 34 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

36.     The Defendant violated Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, in that, as described herein, and in connection with the purchase, offer and sale of securities, they knowingly, recklessly and intentionally:

        a)     employed manipulative and deceptive devices and contrivances;

        b)     employed devices, schemes and artifices to defraud;

c)      made untrue statements of material fact and omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and

d)      engaged in acts, practices and a course of business which operated as a fraud or deceit upon the Plaintiff.

37.      During the relevant time period and as set forth herein, the Defendant, directly and/or indirectly, engaged in one or more common plans, schemes, and unlawful courses of conduct, to operate or perpetrate a fraud or deceit upon the Plaintiff, in connection with the offer, purchase and/or sale of MJTV securities.

38.      During the relevant time period and as set forth herein, the Defendant, directly and/or indirectly, knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon Plaintiff in connection with the offer, purchase and/or sale of MJTV securities.

39.      During the relevant time period and as set forth herein, the Defendant, directly and/or indirectly, published and disseminated false, deceptive and untrue statements of material facts to the Plaintiff in connection with the offer, purchase and/or sale of MJTV securities.

40.      During the relevant time period and as set forth herein, the Defendant omitted material facts, with a duty to disclose such material facts, which a reasonable investor would require in order to make its investment decision, and in order to mislead the Plaintiff in connection with the offer, purchase and/or sale of MJTV securities.

41.      During the relevant time period and as set forth herein, the Defendant made misrepresentations of material fact, and/or omitted material facts while a duty to disclose the same, which a reasonable investor, including the Plaintiff, would require in making its investment

decision, and upon which it relied, to its detriment.

42.     During the relevant time period and as set forth herein, the Defendant's purpose and effect of the scheme, plan, and unlawful course of conduct was, *inter alia,* to induce Plaintiff and others to purchase MJTV securities.

43.     As a direct and proximate cause of the violations of the federal securities laws by the Defendant, Plaintiff Auctus has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

## COUNT II –VIOLATIONS OF MASSACHUSETTS STATE SECURITIES LAWS

44.     The Plaintiff reasserts Paragraphs 1 through 43 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

45.     The Defendant violated the Massachusetts Uniform Securities Act, Massachusetts General Laws Chapter 110A, §§ 101, *et seq., as amended,* in that, as described herein, it offered and sold securities by means of untrue statements of material fact.

46.     The Defendant recklessly and intentionally misrepresented material information and omitted disclosure of material information to the Plaintiff in connection with the offer, purchase and sale of securities in the Commonwealth of Massachusetts.

47.     During the relevant time period and as set forth herein, the Defendant, directly and/or indirectly, engaged in one or more common plans, schemes, and unlawful courses of conduct, to operate or perpetrate a fraud or deceit upon the Plaintiff, in connection with the offer, purchase and/or sale of MJTV securities.

48.     During the relevant time period and as set forth herein, the Defendant, directly

and/or indirectly, knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon Plaintiff in connection with the offer, purchase and/or sale of MJTV securities.

49.    During the relevant time period and as set forth herein, the Defendant, directly and/or indirectly, published and disseminated false, deceptive and untrue statements of material facts to the Plaintiff in connection with the offer, purchase and/or sale of MJTV securities.

50.    During the relevant time period and as set forth herein, the Defendant omitted material facts, with a duty to disclose such material facts, which a reasonable investor would require in order to make its investment decision, and in order to mislead the Plaintiff in connection with the offer, purchase and/or sale of MJTV securities.

51.    During the relevant time period and as set forth herein, the Defendant made misrepresentations of material fact, and/or omitted material facts while a duty to disclose the same, which a reasonable investor, including the Plaintiff, would require in making its investment decision, and upon which it relied, to its detriment.

52.    During the relevant time period and as set forth herein, the Defendant's purpose and effect of the scheme, plan, and unlawful course of conduct was, *inter alia,* to induce Plaintiff and others to purchase MJTV securities.

53.    As a direct and proximate cause of the violations of the Massachusetts state securities laws by the Defendant, Plaintiff Auctus has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

## COUNT III – BREACH OF CONTRACT

54.     The Plaintiff reasserts Paragraphs 1 through 53 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

55.     Pursuant to the Purchase Agreements and the Notes, the Fund invested in the Company and sought to become a shareholder, in good faith, to join the Company in the accomplishment of its business goals and in accordance with the standards of the business and the securities industry.

56.     The Fund alleges that the Company is liable for a breach of contract and for a breach of an implied covenant of good faith and fair dealing. A breach of contract is failure without excuse to perform a duty which is due under the contract. Additionally, the interpretation of a contract is a question of law, not fact. If the wording is not ambiguous, then the contract must be enforced according to its plain terms.

57.     The Plaintiff performed its obligations under the Purchase Agreements and the Notes, and in good faith.

58.     The Defendant, by its conduct described herein, violated the Purchase Agreements and the Notes, breaching its contracts with the Plaintiff.

59.     As a direct and proximate cause of the Defendant's breaches of its contracts, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT IV – BREACHES OF IMPLIED
## COVENANT OF GOOD FAITH-FAIR DEALING

60.     The Plaintiff reasserts Paragraphs 1 through 59 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

61.     It is well established in that every contract carries an implied covenant of good faith and fair dealing whereby the parties treat each other fairly and act in good faith and no party to the contract shall take any action to harm another party's rights under the contract. The duty imposed by this "implied covenant of good faith and fair dealing" pertains to bad faith in the performance of a contract, not just in its execution or negotiation. Implicit in every contract is the requirement on faithfulness to an agreed upon common purpose and consistency with the justified expectations of the other party.

62.     A breach of contract is the failure to perform for which legal excuse is lacking. As a matter of law, a contract existed, which the Company breached and failed to comply with the covenant of good faith and fair dealing. The law is clear - the Fund had a binding contract and the Company has no legal basis, as a matter of law, to avoid its obligations under the Transaction Documents, including but not limited to damages which arose, and which might arise, as a result from the breach of such Transaction Documents.

63.     The Defendant had a duty of good faith and fair dealing in its dealings with the Plaintiff and pursuant to the promises, contract, and statements made to the Plaintiff to induce it to enter into the contract and provide assets to the Defendant in exchange for its promise to repay the same, with interest.

64.     Under the covenant, the Defendant was obligated to a good faith performance of its obligations under the Transaction Documents with Auctus, and to be faithful and consistent to the justified expectations of the Plaintiff.

65.     As described above, the Defendant breached the implied covenant of good faith and fair dealing with the Plaintiff.

66.     As a direct and proximate cause of the Defendant's breaches of the implied covenant of good faith and fair dealing, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT V – UNJUST ENRICHMENT

67.     The Plaintiff reasserts Paragraphs 1 through 66 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

68.     The Defendant illegally received assets and benefits from the Plaintiff, as arising from its false and fraudulent statements and misrepresentations, and without providing equivalent value therefor.

69.     The Defendant's actions, courses of conduct, and omissions were wantonly, intentionally, and maliciously conducted against the Plaintiff, to its detriment.

70.     The Defendant has been unjustly enriched by its actions, as described herein.

71.     As a direct and proximate cause of the Defendant's unjust enrichment, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT VI – BREACH OF FIDUCIARY DUTY

72.     The Plaintiff reasserts Paragraphs 1 through 71 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

73.     A fiduciary relationship existed between the Plaintiff and the Defendant, requiring it to act with a duty of the utmost loyalty and trust on behalf of the Plaintiff.  As a fiduciary, the Defendant was required to maintain and protect the welfare of the Plaintiff.

74.     By engaging in the conduct described herein, the Defendant breached its fiduciary duties to the Plaintiff.

75.     As a direct and proximate cause of the Defendant's breach of fiduciary duty, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT VII - FRAUD AND DECEIT

76.     The Plaintiff reasserts Paragraphs 1 through 75 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

77.     The actions of the Defendant described herein constitute fraud and deceit, including but not limited to the following:

   a)     the Defendant made false representations of material facts, and/or omitted material facts with a duty of disclosure, knowing or having reason to know of their falsity;

   b)     the Defendant made said misrepresentations and omissions for the purpose of inducing reliance from the Plaintiff; and

   c)     the Plaintiff did rely upon said misrepresentations and omissions, to its detriment.

78.     As a direct and proximate cause of the Defendant's fraud and deceit, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT VIII - NEGLIGENT MISREPRESENTATION

79.     The Plaintiff reasserts Paragraphs 1 through 78 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

80.     The conduct of the Defendant as described herein constitutes negligent misrepresentation in that the Defendant negligently provided the Plaintiff with erroneous and misleading information, and negligently omitted material information with a duty to disclose, to the Plaintiff's detriment.

81.     As a direct and proximate cause of the Defendant's negligent misrepresentations, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT IX - VIOLATIONS OF MASSACHUSETTS CONSUMER PROTECTION ACT / M.G.L. C. 93A, §§ 2 & 11

82.     The Plaintiff reasserts Paragraphs 1 through 81 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

83.     At all relevant times herein, the Defendant conducted a trade or business, as defined by the Massachusetts Consumer Protection Act, M.G.L. c. 93A, within the Commonwealth of Massachusetts.

84.     The conduct of the Defendant as described herein, constitutes unfair and deceptive trade practices, under Sections 2 and 11 of the Consumer Protection Act, including but not limited to claims that the Defendant:

a)      executed the Transaction Documents with full knowledge and understanding of the Defendant's obligations to the Plaintiff;

b)      fraudulently induced the Plaintiff to invest in the Company and thereby breached its promise to the Plaintiff;

c)      fraudulently concealed from the Plaintiff the full and complete financial and operational details and prospects of the Company in inducing the Plaintiff to make its investment in the Company;

d)      knowingly and intentionally concealed these activities from the Plaintiff, to its detriment; and/or

e)      violated the requirements, terms and conditions of existing statutes, rules and regulations meant for the protection of the public's health, safety or welfare.

85.     As a direct and proximate cause of the Defendant's violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, Sections 2 and 11, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## VI. **REQUESTS FOR RELIEF**

WHEREFORE, the Plaintiff, Auctus Fund, LLC, respectfully request that this Honorable Court grant it the following relief:

A) Order, grant and enter temporary, preliminary and permanent injunctive and equitable relief, and specific performance, and finding that the Plaintiff has suffered irreparable harm, has a likelihood of success on the merits, that the balance of hardships favors the Plaintiff and that it is in the public interest to grant such temporary, preliminary and permanent injunctive and equitable relief, and specific performance for the benefit of the Plaintiff, as set forth herein;

B) Determine that the Defendant is liable for all damages, losses, and costs, as alleged herein;

C) Determine and award the Plaintiff, Auctus Fund, LLC, the actual losses sustained by it as a result of the violations of law by the Defendant, as set forth herein;

D) Render a judgment and decision on behalf of the Plaintiff, Auctus Fund, LLC, on all Counts of the Complaint, and issue findings of fact and rulings of law, as necessary and appropriate, that the Defendant is liable, in all respects;

E) Order, decide, adjudge, and determine that the liability of the Defendant, is for all losses, injuries, and damages, special, consequential, general, punitive, and/or otherwise, and for all interest and costs, as alleged herein;

F) Award the Plaintiff, Auctus Fund, LLC, its costs, including, but not limited to, filing fees, costs, expenses and interest, for being required to prosecute this action;

G) Award the Plaintiff, Auctus Fund, LLC, its actual attorneys' fees, for being required to prosecute this action;

H)       Award the Plaintiff, Auctus Fund, LLC, multiple, double, treble, and/or punitive

damages in an amount to be determined;

I)        Enter judgment on behalf of the Plaintiff, Auctus Fund, LLC, on the Complaint;

J)        Order declaratory relief, as appropriate and as this Honorable Court deems

necessary; and/or

K)       Any additional relief, which this Honorable Court deems just and proper.

**THE PLAINTIFF, AUCTUS FUND LLC,**
**<u>DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE</u>**

Respectfully Submitted,
PLAINTIFF, Auctus Fund LLC,

By its Attorneys,

___ /s/ *Philip M. Giordano* ___
Philip M. Giordano, Esq. (BBO No. 193530)
Sophia E. Kyzirids, Esq. (BBO No. 703590)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
47 Winter Street, Suite 800
Boston, Massachusetts 02108-4774
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Email: pgiordano@reedgiordano.com
Dated: July 14, 2020                    Email: skyziridis@reedgiordano.com